## T. F. HUDSON v. T. W. MORRISS ET AL.

(Case No. 2770 )

1. FRAUD — SHERIFF'S SALE. — A party having sold land, taking notes for the purchase money, sued to foreclose the vendor's lien, but before judgment transferred the notes to his children, who in turn transferred them to the attorney bringing the suit to foreclose; and the attorney not caring to use his own name in the proceedings, prosecuted the cause to judgment in the name of the original plaintiff, without consulting him. The stay law being in force at the time, no process was sued out until the stay law had afterwards been declared unconstitutional, when, at the request of his predecessor, the clerk issued an order of sale without the knowledge of the owner of the judgment, under which the land, worth five dollars per acre, was sold, through collusion with the sheriff and the original plaintiff in the cause, for twenty-one cents per acre, the purchaser buying ostensibly for himself, but secretly for himself and the original plaintiff. In a suit by the real owner of the judgment to set aside the sale for fraud, and to recover the land from the purchaser as trustee, a judgment which in effect declares a trust in favor of the plaintiff, and enforces it by a recovery of the land, is erroneous.

2. TRUST — FRAUDULENT SALE. — A trust will not be declared in case of a fraudulent sale, if thereby the person who is made the beneficiary will in effect receive the benefit of the fraud at the expense of another who has been defrauded by the transaction, and who is equally innocent as the party in whose favor the trust is sought to be declared. To do so would be discriminating between the actors in the fraud and a creditor seeking to appropriate its advantages. Where once a fraud has been committed, not only is the person who committed the fraud precluded from deriving any benefit from it, but every innocent person is likewise, unless he has innocently acquired a subsequent right; for a third person, by seeking to derive any benefit under such transaction, or resulting therefrom, becomes *particeps criminis*, however innocent of the fraud in the beginning.

3. SHERIFF'S SALE — FRAUD. — A sheriff's sale, procured by fraud, will not be converted by a court of equity to the profit of any one, the remedy provided by law being to place the parties in *statu quo* by setting aside the sale.

4. NOTES, TRANSFER OF. — When the holder of notes transfers them he is no longer chargeable with any duty in regard to them, and the transferee has the right to control the judgment that may be

rendered on them; and at sheriff's sale under execution on the judgment, the transferer has the right to bid as would any indifferent person. The law will not charge a duty with its corresponding trust upon another to perform those acts which may be done by the party to be benefited.

5. JUDGMENT, ASSIGNMENT OF.— The assignment of a judgment, or note in suit, does not impose any trust relation upon the assignor. The assignee is only entitled to the benefits which by law attach to a change of ownership; and pending suit the assignee has a right to use the assignor's name to prosecute the claim to judgment and to direct its enforcement.

6. SAME.— An assignor by assignment incurs an obligation to do no act inconsistent with his changed relation to the judgment assigned; and an assignee by virtue of his equitable interest has a right to control the collection of a judgment, and for that purpose to use the name of the plaintiff, his assignor, and to receive the money when collected.

7. SAME.— One having by assignment parted with his interest in a judgment is no longer a necessary or proper party to proceedings for the purpose of setting it aside, or for enjoining or obtaining other relief from it; and a party, or after his death his legal representatives, in whose name a judgment has been recovered for the benefit of another, cannot refuse to prosecute a suit to revive the judgment.

8. SAME.— From the institution of suit to the final satisfaction of the judgment, the party who is beneficially interested is permitted to act in his own behalf to enforce his rights, though the proceedings may be in the name of another who appears to have the legal right; and, when necessary, the other party will be forced to allow the proceedings to be preserved in the name of the original plaintiff.

9. INTERVENOR.— While an intervenor is not bound by a statement of facts not signed by her counsel, or a judgment on writ of error regarded as passing on her rights, yet where she adopts the allegations of the plaintiff and prays for the same remedies, the judgment affects alike both plaintiff and intervenor.

10. CHARGE OF THE COURT.— Where the instructions to the jury are clearly erroneous and calculated to mislead, to the injury of a party, to sanction the judgment which follows it should be clear that such a consequence did not in fact ensue from the error.

ERROR from Burleson. Tried below before the Hon. F. P. Wood.

November 12, 1859, W. S. Holmes sold to B. B. Baker

two thousand three hundred and fifty-six acres of land out of the A. Colvin league survey in Burleson county, taking notes amounting to $4,500, secured by vendor's lien on the land sold. In 1867 he placed the notes in the hands of Morriss (defendant in error), an attorney, for collection. Suit was instituted in the name of Holmes, but before judgment he transferred the notes to his children, W. A. Holmes, James Holmes, Mary A. Collins and Emily Holmes (the last named being a minor, unmarried, and living with her father), from whom Morriss purchased the notes.

Morriss being attorney in the case, not caring to use his own name without consulting Holmes, prosecuted the suit to judgment for $7,386.80, in the name of W. S. Holmes, and foreclosed the vendor's lien on the land March 20, 1867. A stay law being then in force, no process was issued on the judgment until April 3, 1868, when, the stay law having been previously decided inoperative, an order of sale was issued at the instance of a former clerk, who had costs due him, but without the knowledge or consent of Morriss. The land was sold under the order of sale May 5, 1868, and bought by T. F. Hudson, the plaintiff in error, for twenty-one cents an acre.

June 13, 1868, Morriss brought this suit against T. F. Hudson, William Kay, the sheriff, and W. S. Holmes, to set aside the sale, alleging that he had not ordered the execution to issue, and had no notice of the time of sale; that defendants, colluding and combining for the purpose of defrauding plaintiff, circulated the rumor that the judgment was the property of defendant Holmes, and that it was useless for others to bid, for the reason that Holmes was determined to bid in the land for himself, thereby inducing others not to bid; that W. J. Hill (the former clerk) was about to bid in the land for plaintiff in order to prevent a sacrifice of plaintiff's interests, when

defendant Kay, with intent to defraud plaintiff, repre-
sented that plaintiff had notice of the sale, and prevented
Hill from bidding in the land; that the land was bid off
by defendant Hudson, ostensibly for himself, but in fact
for himself and Holmes; that the land was bid off for
twenty-one cents per acre, but was worth five dollars per
acre; whereby plaintiff was defrauded of his rights; and
praying that the sale be set aside. By amended petition,
filed December 12, 1872, plaintiff prayed that defendants
Hudson and Holmes be declared trustees, holding the
land in trust for plaintiff, and that all the right, title and
interest acquired by either of them to the land by reason
of the sale be divested out of them and vested in
plaintiff.

The defendants answered separately, Kay and Holmes
denying fraud and collusion, and disclaiming any interest
in the controversy. Hudson denied fraud and collusion,
claimed the land under the sale, and that the sale was
openly and regularly made.

April 6, 1871, Emily Conner (formerly Emily Holmes),
joined by her husband, intervened, claiming one-fourth
of the judgment against Baker and one-fourth of the
land in controversy, by reason of the transfer to her from
her father, W. S. Holmes, while she was a minor, and
because the land, when sold to Baker, belonged to the
community estate of her father and deceased mother;
praying that the sale be set aside or defendants declared
to hold the land in trust, and for partition.

On the trial the evidence was voluminous, but, in view
of the decision arrived at by the supreme court, is not
necessary to a proper understanding of the case.

At the request of the plaintiff, the court instructed the
jury as follows:

" 4th. The main issue for you to determine will be
whether or not, under such instructions as the court
shall give you, applied by the evidence, the defendant

Hudson, in making the purchase at sheriff's sale, shall be held as a trustee for the real owner of the judgment.

" 5th. In reference to this issue, the court instructs you that W. S. Holmes, being the plaintiff in the judgment, and the apparent legal owner of it on the records, by his transfer of the notes on which the judgment was founded to his children (if that transfer has been proven to your satisfaction), became by operation of law a trustee for his said children.

" 6th. And you are further instructed, that if one or more of his children afterwards transferred their interests in the judgment to the plaintiff Morriss, then W. S. Holmes would likewise by operation of law become a trustee for Morriss to the extent of his interest.

" 7th. In this aspect of the case, it will make no difference that W. S. Holmes did not know or suppose that he held the relation of trustee for the real owner. The law fixed his character as such whether he knew it or not.

" 8th. If, under the foregoing instructions, you should believe that W. S. Holmes was a trustee for the plaintiff and the intervenor, it was a character which he could not shake off without full and fair notice to the real owners; and there has been no evidence of such notice.

" 9th. And the court further instructs you, that if the defendant Hudson, before he bought, knew that Holmes was only the nominal plaintiff in the judgment, and that it really belonged to others, when he afterwards purchased the trust property he became charged, by operation of law, with the character of a substitute trustee in the place and stead of Holmes for the real owners of the judgment.

" 10th. It clearly appears from the testimony of defendant Hudson and that of the defendant Holmes, that Hudson did have the requisite legal notice of the trust in W. S. Holmes for the real owners of the judgment.

" 11th. The court therefore charges you as a matter of legal inference from the facts of this case, that Hudson

was a trustee for the real owners of the judgment, and was bound to protect their interests, and was forbidden by law to act adversely to them.

"12th. And the court instructs you, that if you believe from the evidence that the plaintiff and Mrs. Conner owned the said judgment at the date of the sheriff's sale, then the purchase of the property by Hudson was *prima facie* fraudulent; and in the absence of clear proof that the land brought an adequate and full price, you should find for the plaintiff and the intervenor.

"23d. The secret agreement between Hudson, the purchaser, and Holmes, the nominal plaintiff in the judgment, that Hudson was to buy it in and pay for it, and should afterwards let Holmes have half of it at the cost price and interest, was a badge of fraud.

"28th. The fact that this was a judicial sale by the sheriff makes no difference in the application of the principles heretofore enunciated; in both public and private sales the same principles are applicable.

"29th. And it is not necessary to the plaintiff's recovery that you should believe the conduct of the defendant was actually tainted with moral fraud or evil intention; all that is necessary is that it should be shown to be contrary to some of the foregoing rules established by public policy for the protection of society.

"30th. If, under the foregoing instructions, you should believe that Hudson should be held as a trustee for the plaintiff and the intervenor, you will say by your verdict, 'We find for the plaintiff and intervenor.'"

Verdict for the plaintiff and intervenor, and judgment in favor of the plaintiff for three-fourths, and in favor of the intervenor for one-fourth of the land in controversy.

Motion for new trial overruled, and Hudson alone prosecutes a writ of error to the supreme court, assigning as error:

"The instructions given to the jury at the request of

plaintiff, and particularly in the whole of the 4th, 5th, 6th, 7th, 8th, 9th, 10th, 11th and 12th instructions so given; because in said instructions the court assumed that the facts of this cause made defendant Hudson a trustee for the benefit of the plaintiff as to the land in question, while in fact the law called for no instructions upon the case relating to trustees, there being nothing in the case to raise a question of that character.

"The 10th instruction asked for by plaintiff, in charging the jury upon the weight of evidence, and assuming to inform the jury what clearly appears from the testimony.

"The instruction asked by the plaintiff, in charging the jury that, from the facts of this case, defendant Hudson was a trustee for the real owner of the judgment, when there was nothing proved on the trial showing such a relation.

"Giving the jury the 23d instruction asked by the plaintiff.

"Giving the 28th, 29th and 30th instructions asked by plaintiff."

*J. D. Thomas* and *Hancock, West & North,* for plaintiff in error.

*Sayles & Bassett, Davis & Beall,* and *McIver,* for defendant in error.

I. Holmes, the nominal plaintiff in the original judgment of foreclosure, the equitable ownership being in others, could not have bought and held the land adversely to his *cestuis que trust,* under a purchase at a grossly inadequate price, made without their knowledge, in their absence, against their interest, and over their express dissent.

II. Hudson cannot hold the land so bought by him for account of himself and Holmes under a secret trust, he being fully apprised that Holmes was a trustee for the benefit of others.

III. Should the court hold that they were competent to purchase, the gross inadequacy of the price, coupled with other circumstances disclosed in the record, authorized the court below to set aside the sale.

*Hutchison & Carrington*, for intervenor.

WALKER, P. J. COM. APP.— The judgment appealed from in effect declares a trust in favor of the plaintiff and the intervenor in the land conveyed by sheriff's sale deed to the defendant Hudson, and enforces the trust by a judgment in their favor for the recovery of the land,— three-fourths of it to belong to the plaintiff, and the remaining one-fourth to Emma Conner, the intervenor. The basis, in the pleadings of the plaintiff, on which the existence of such a trust is predicated, consists of allegations which charge two grounds for the creation of such a trust; the first, that the plaintiff being the assignee of the notes and the vendor's lien which attached to them, and being the owner of both, at and before the rendition of judgment in the name of the payee of said notes, that the defendant Holmes, who was such payee, and plaintiff in the suit on the notes and to foreclose the lien, and who had transferred the notes as above stated during the pendency of the suit, became thereby the agent and trustee of the plaintiff to collect such judgment. The second ground was, that Holmes assumed to control the judgment, and that the levy, advertisement of sale of the property, and the sale of it, was made under his directions; that at the sale, Holmes colluded and combined with Hudson to prevent competition at the sale, and succeeded in doing so, causing the property to be grossly sacrificed, under an arrangement that Hudson should bid in the land, and they would divide it between them.

It will be convenient to dispose at once of the first ground relied on, to fix upon Holmes a trust relation to

the plaintiff. That no such relation is created, nor such obligations imposed upon the assignor of a judgment, or transferer of a *chose in action*, as a note in suit, as are claimed by the plaintiff under the proposition under consideration, is too manifest to require a discussion of it as a question open to controversy. If the assignment of a note on which suit is pending makes provision for any ulterior liability of the assignor, as by guaranty or indorsement of the note, or by making provision for collateral undertakings in regard to the subject matter, they would attach to the note thus transferred, and have no relation to the assignor's obligation to enforce the rights or to collect a debt in which he no longer held or claimed an interest. The assignee would be entitled to no more than the benefits which would be fairly implied by the law to attach to a change of ownership; and if the suit were pending when the note was assigned, the assignee would be entitled to use the assignor's name to prosecute the claim to judgment. 2 Story's Eq. Jur., sec. 1040. And so, too, of the assignment of the judgment itself; the assignee has the right to direct its enforcement. Held, in McClane *v.* Rogers, 42 Tex., 214, "If there was a valid transfer of a judgment, and notice thereof given to the sheriff before its collection, the money when collected on such judgment would belong to the assignee." And, says Freeman on Judgments, sec. 421, speaking of the doctrine at common law, "the assignee, by virtue of his equitable interest, had the right to control the collection of the judgment, and for that purpose to use the name of the plaintiff, his assignor, and to receive the money collected." More than this, it is laid down, by the same authority, "that one who makes an assignment of his judgment incurs an obligation to respect his own assignment, and therefore *to do no act* inconsistent with his changed relation to the judgment." Freem. on Judg., 426*a;* Booth *v.* Farmers' & Mechanics' Bank, 50 N. Y., 399. The assignor of a

judgment is not liable to pay the amount of the judgment in case the judgment debtor proves insolvent.  Robinson v. White, 4 Litt., 237.  " The assignor having by his assignment parted with his interest in the judgment, is no longer a necessary or proper party to proceedings for the purpose of setting it aside, or for the purpose of enjoining or obtaining other relief from it."  Freem. on Judg., sec. 430.  " It cannot be questioned (remarked Justice Moore in Wimbish v. Holt, 26 Tex., 675), that a suit might be prosecuted by the parties beneficially interested in them (promissory notes), in his name."  In the case of a party who is the real beneficiary in a judgment recovered in the name of another, the latter cannot refuse to prosecute a suit to revive the judgment, nor can those who represent him after his death make such refusal, nor is there any valid objection in law to the revival of such judgment in the name of the legal representatives of such person in whose name such judgment was obtained. Grayson v. Winnie, 13 Tex., 288; and see Henderson v. Vanhook, 25 Tex. Sup., 453, S. C., 24 Tex., 358.

In every stage of judicial proceeding in a suit, from its institution on, through every stage, down to the final extinction or satisfaction of the judgment, it is to be seen from the quotations and citations which have been made, that the party who is beneficially interested is permitted to act in his own behalf to enforce his right, although the proceedings may have been had in the name of another party who appears to have the legal right, and to be the ostensible owner of the interest involved; and that, when necessary to the maintenance of the beneficiary's right, the other party or his legal representatives will be forced to allow the proceedings to be preserved in the name of the original plaintiff.  There exists, therefore, no reason upon which the law will charge a duty with its corresponding trust upon another, to perform those acts which may be done by the party to be benefited; for,

indeed, they are acts which, after an assignment of his interest, the assignor may *not* do, unless with the consent of the beneficiary, express or implied. · When the defendant Holmes transferred the notes, he was no longer chargeable with any duty in regard to them; and the transferees had the right to control the judgment that might be rendered upon them, and the transferer, at a sheriff's sale, under an execution issued upon the judgment, had a right to bid as would any indifferent person.

Upon the second ground relied upon as sufficient to base a trust in favor of the plaintiff, it is necessary to establish a fraud against Hudson, the purchaser; and it must be, besides, a fraud of that character for which, not merely may Hudson be defeated in his title and the sale set aside as a fraudulent one, but it must be associated with such facts as will entitle the plaintiff and the intervenors to succeed to a title valid and uncontaminated by a fraud in its very inception. A distinction is to be noticed between a fraud committed by bidding at a sale which will afford ground for simply setting aside the sale therefor — a sale that is voidable for fraud at the instance of any of the parties who may be injuriously affected by it (where, for instance, the defendant in the execution whose property was sold might as well complain of fraud as might the plaintiff in execution, as in the case of a fraudulent combination to cause a sacrifice of the property below its value by preventing a fair sale, or fraudulently preventing competition among bidders), and the case of such a fraud as in which the sale will not be set aside and annulled for the fraud, but will be allowed to stand and the purchaser held as a trustee for the person defrauded.

A trust will not be declared in the case of a fraudulent sale, if thereby the person who is made the beneficiary of such declaration of trust will in effect receive the benefit of the fraud at the expense of some other person

who is defrauded in the transaction, and who is equally innocent as the party who is to be benefited by the declaration of the trust. As, for instance, where a debtor's property, sold under execution, by fraud which would vitiate the sale, is sacrificed, to the loss of the owner of it, the plaintiff in execution will not be permitted to charge the fraud and appropriate to his benefit the fruits of the wrong by holding the fraudulent purchaser as his trustee, and from the proceeds of the fraud ask to be enriched with the ill-gotten spoils. To allow such a result would be for the court to sanction the wrong by simply discriminating between the actor in the fraud and a creditor seeking to appropriate its advantages. In such case, the debtor has been defrauded of his property, and the creditor, by setting aside the sale merely, is no worse off, as regards that property, than before. He will not be heard to allege that the debtor has been defrauded under such circumstances, and ask that the proceeds of the speculation and fraud shall be transferred to himself. The doctrine, says Perry in his work on Trusts, vol. 1, sec. 172, has been thus broadly stated: "That where once a fraud has been committed, not only is the person who committed the fraud precluded from deriving any benefit from it, but every innocent person is so likewise, unless he has innocently acquired a subsequent interest; for a third person, by seeking to derive any benefit under such a transaction, or to retain any benefit resulting therefrom, becomes *particeps criminis*, however innocent of the fraud in the beginning."

The plaintiff and intervenor can obtain through the means of this sheriff's sale, if their allegations are true, no interest in the land in controversy except through a fraudulent conspiracy which resulted in the ruin of the owner of the land. The petition shows that the land ought to have sold for thousands of dollars but for the fraud; whereas it sold for but a few hundred, leaving the

judgment almost intact hanging over the defendant in execution, or his estate. If the sale was procured by fraud such as is alleged, the transaction does not present a case on which, under any principle of equity jurisdiction, that fraud will be converted to the profit of the plaintiff and intervenor. Such a course is not the remedy which fair and impartial justice prescribes; the law offers one that is wholly adequate and unmixed with oppression, and unpolluted with fraud; which is to place the parties in *statu quo*, in respect to both title and lien, by setting aside the sale if shown to be fraudulent.

The cause was tried and determined by the district court on a view of the law the reverse of these; and for the error in the judgment, the charges given by the court, both of which assuming that Hudson became and was a trustee for the plaintiff and intervenor by virtue of the uncontested fact that at the sale Hudson knew that Holmes was not the owner of the judgment, it follows that our opinion must be that the judgment ought to be reversed. The jury were doubtless influenced in their finding under the charge referred to, and the further direct instruction that Hudson, under the evidence, was the trustee of plaintiff and intervenor, and bound to protect their interests at the sale, and that Hudson's purchase was *prima facie* fraudulent, etc.; all of which being most material, erroneous and misleading, we not only cannot say but that the jury may have been misled, but that it was a duty on the part of the jury to accept the law as given by the court, and consequently they were, presumably in fact, misled, to the injury of the appellants. Mims *v.* Mitchell, 1 Tex., 443; Bailey *v.* Mills, 27 Tex., 434; Steagall *v.* McKellar, 20 Tex., 265.

The statement of facts was not signed by the counsel for the intervenor, Mrs. Conner, nor is the statement of facts certified by the judge as to the facts so far as the evidence on the trial related to her, as in case of disagreement of counsel concerning the statement. The inter-

venor is not bound by such statement of facts as this is, and it will not be regarded in passing upon her rights on this writ of error. Blow *v.* Heirs of De la Garza, 42 Tex., 232.

The application, however, of the above rule cannot result in a discrimination between the plaintiff and the intervenor in respect to the judgment which shall be rendered by the supreme court. The pleading filed by the intervenor, in legal effect, was an assertion of her interest of one-fourth in the judgment under which the sale was made, and so far as the remedy sought by her in her intervention was concerned, it was not substantially different, nor placed upon grounds variant from those upon which the plaintiff relied, notwithstanding it was alleged by her that she may have been entitled to one-fourth of the land in right of heirship to her mother; yet, nevertheless, she did not ask any relief in that respect, in case it should be decreed that the sale to Hudson was fraudulent, and for that reason to be set aside. The plea of intervention repeated by the following language the allegations of the plaintiff's petition, viz.: "They allege, *in addition to facts charged by plaintiff,* that said Hudson, before the purchase, . . . etc., knew that she was the owner of said judgment." The petition of the intervenor concluded with the proposition upon the facts alleged by her, as follows: "That the sale should be set aside, or the said Hudson declared the trustee of intervenor as to one-fourth of said land, and her title thereto established by decree of this court." She proceeded further to charge that Hudson and Holmes "procured the making of the sale, and are therefore but trustees for the owners of said judgment in the purchase." There is an alternative prayer by the intervenor, to the effect that, in case the sale cannot be set aside, that she recover her one-fourth interest in the land in right of her ownership as heir to her mother.

It is apparent that it was under the charge given by

the court that the jury found a verdict, and that upon that finding the plaintiff and intervenor recovered the judgment that was rendered. The verdict was in terms expressed " for plaintiff *and intervenor*."

It is evident and incontrovertible, from the charge and verdict, as applied to the pleadings filed both by the plaintiff and the intervenor, that the jury found upon evidence which, at all events, had application to facts essential to set aside the sale for fraud, as the plaintiff had no other claim or case against the defendants than such as arose from a fraudulent sale; and as to the plaintiff, at all events, it is legally certain that the jury found that the sale was fraudulent as to the plaintiff. If, now, it were true that the intervenor may have introduced ample evidence to have entitled her to recover upon a ground wholly distinct from that of fraud, viz., upon her heirship to her mother, nevertheless the whole charge of the court is before us; and the statement of facts in the record, whilst not binding upon the intervenor, shows the existing fact that there was evidence before the jury relating to the issue of fraud, and which may have influenced their verdict as to both plaintiff and intervenor. If they found for the intervenor on the same issue as for the plaintiff, the same reasons for reversing the judgment, of course, apply equally to both. We cannot say from the record that they may not have done so. The intervenor's petition prayed for the same remedies, and adopted the allegations made by the plaintiff's petition; and unless we are able to say that the jury certainly were not influenced to find for the intervenor under the same evidence as that which is before us, it follows that the erroneous instructions and erroneous judgment in the case must affect both plaintiff and the intervenor.

Under the cause of action set forth by the intervenor, we have determined that under no evidence which could have been offered by her was she entitled to recover the

land, unless upon the ground of ownership in the land itself, in her inheritable right from her mother. The record does not enable us to say that the judgment was based upon that part of her case; and the record does show that she sued upon the same grounds and relied upon the same issues as were presented in the plaintiff's case, as well as upon her alternative claim to the land as heir. She also disclaimed relying upon or asking any benefit from said alternative prayer, in case the sale was held to be fraudulent. The sale was held to be fraudulent. Under facts like these, whatever may have been the evidence, or how satisfactorily soever it might have been to establish her right to recover the fourth of the land as heir, inasmuch as the verdict and judgment clearly held the sale to be fraudulent, and decreed that the purchaser acquired a title to be held in trust only for the plaintiff and the intervenor, it would be only consistent with the prayer of the intervenor in her petition of intervention to construe the verdict and judgment which was rendered in her favor to have been based upon the same issues on the trial that determined the plaintiff's rights. Such being the case, the same reasoning applies for a reversal to her as to the plaintiff. Where the action of the court in instructing the jury is clearly erroneous and calculated to mislead the jury to a wrong result to the injury of a party, in order to sustain the judgment which follows it, it ought to be clear that such a consequence did not in fact ensue from the error. This principle has been often applied by the supreme court in the reversal of judgments. Held, in Williams v. Conger, 49 Tex., 583, "that a judgment will be reversed where an improper issue has been submitted to the jury, and where it cannot be seen from the record but that the jury may have found a verdict upon such issue, although the verdict upon the law and testimony was correctly found upon the merits." We think the rule quoted above has

proper application here. "If the jury may have been misled by an erroneous charge, the judgment will be reversed, although there were other grounds upon which they might have based their verdict." Ponton *v.* Ballard, 24 Tex., 619. We do not think it is necessary to consider the other grounds of error assigned.

We conclude, upon the whole case, that there was error for which the judgment ought to be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered November 16, 1881.]