## NORTHERN TEXAS TRACTION CO. v. CLARK & SWEETON et al.    (No. 3049.)

(Court of Civil Appeals of Texas. Texarkana. April 20, 1925. Rehearing Denied May 7, 1925.)

1. **Venue** ⬅22(3)—**Attorneys suing traction company for unauthorized settlement after notice of assignment held to have improperly joined assignor and sued in county of his residence.**

Attorneys, as assignees of portion of claim against traction company, suing traction company for making unauthorized settlement and payment, after notice of plaintiff's claim, *held* to have improperly joined plaintiff's assignor, and brought suit in county of his residence, under Rev. St. art. 1830, subd. 4.

2. **Parties** ⬅26—**Contractual obligation must be joint, or joint and several, to warrant joinder of parties defendant.**

It is essential to a proper joinder of parties defendant that contractual obligation sued upon be in its nature joint, or joint and several.

3. **Attorney and client** ⬅148(2)—**Attorney's agreement for part of proceeds of claims is assignment pro tanto.**

Agreement between attorney and client, by which attorney is to have for his services a

---

fixed portion of whatever amount of money shall be realized or received on claim, whether of tort or contract, is an equitable assignment pro tanto.

**4. Attorney and client ⊂⇒184, 189—On notice to debtor of assignment to attorney, attorney's title becomes absolute as against attachment creditors or collusive agreements.**

On notice to debtor of assignment to attorney of part of claim, title vests absolutely in attorney, as against attaching creditors of assignors, or collusive agreements of assignors and debtor.

**5. Venue ⊂⇒22(3)—Traction company's unauthorized overpayment after notice of assignment does not create joint liability as affects joinder of parties defendant in action on assignment.**

Traction company's voluntary and unauthorized overpayment of claim, after notice of assignment of portion of claim to attorneys, is not such as would constitute a joint liability for such overpayment between traction company and claimant, and warrant attorneys in joining such persons as parties defendant in action on assignment.

**6. Venue ⊂⇒22(3)—Alleged collusive settlement by traction company and claimant, after assignment of portion of claim to attorney, held not joint tort.**

Traction company's unauthorized overpayment to one asserting claim against it, after notice of assignment of part of claim to attorneys and claimant's receipts of such overpayment, *held* not a joint tort rendering both parties liable for attorneys' portion of claim, so as to warrant their joinder as parties defendant in attorneys' action.

**7. Parties ⊂⇒27—Tort-feasors cannot be joined as parties defendant unless there is a community of wrongdoing defeating some right of plaintiff.**

Unless tort pleaded is a joint tort, in sense of community of wrongdoing, defeating some right of plaintiff, there cannot be a joinder as parties defendant in one action of the several distinct tort-feasors.

Error from Hunt County Court; Ollie P. McWhirter, Judge.

Action by Clark & Sweeton against the Northern Texas Traction Company and others. Judgment for plaintiff, and the named defendant brings error. Reversed, with instructions.

Clark & Sweeton, attorneys residing in Hunt county, brought the suit in the county court of Hunt county against F. M. Williams and his wife, Lula L. Williams, residents of Hunt county, and the Northern Texas Traction Company, a corporation operating an electric railway extending from Dallas to Fort Worth, with principal office in Fort Worth in Tarrant county. The attorneys sought to recover, under an agreement with their client Williams, one-third of the

amount of money which was accepted by the client as a full compromise settlement of a pending suit brought by the client, and transferred to the attorneys by an assignment. The transactions out of which the action grows are alleged in the petition substantially as here stated. On January 29, 1921, Mrs. Williams received serious personal injuries at a street crossing in the city of Fort Worth, due to the alleged negligence and carelessness of the operatives of the interurban car of the Northern Texas Traction Company. Afterwards, about June 8, 1921, Mrs. Williams, joined by her husband, employed the above mentioned attorneys, as a firm, and entered into a contract by which the attorneys were "to have a one-third" portion of whatever amount of money should be realized or received in a compromise settlement of the claim in case the same was made "without trial of the suit," or "to have a 40 per cent." portion of the amount of the judgment for damages "rendered on the trial of the suit." The attorneys first undertook to negotiate a settlement of the claim, but failed in their efforts to do so; and then, on July 15, 1921, the attorneys filed the suit for damages in Mr. and Mrs. Williams' name against the traction company in the district court of Dallas county. The case was prepared for trial by the attorneys, and it was set for trial, when reached on the assignment of the docket, for May 10, 1923. After setting out these facts, it is then alleged in the petition that:

"Between the 1st and 10th of May, 1923, the Northern Texas Traction Company fraudulently settled with F. M. Williams and wife, Lula L. Williams, said suit, without notice of any character, to, or without conferring with, said Clark & Sweeton; that said traction company, acting by and through its agents, and with full knowledge of the assignment and transfer by the defendants F. M. Williams and Lula L. Williams to plaintiffs of a portion of said cause of action, paid to said defendants F. M. Williams and Lula L. Williams the sum of $1,500, in settlement of said claim, and obtained their release therefor. Plaintiffs allege that by reason of the premises they are entitled to recover of and from the defendant, the Northern Texas Traction Company, the sum of $500, the same being one-third of the amount for which the said company compromised said suit or claim, and that they are entitled to recover of and from the defendants F. M. Williams and Lula L. Williams said sum of $500; that they have made demand upon each of the said defendants for said sum, which demand has been declined, said defendants refusing to pay said sum or any part thereof."

The prayer was for "judgment against the defendants jointly and severally for the sum of $500, together with 6 per cent. interest from May 1, 1923." The evidence supports the allegations that the Traction Company had notice of the assignment before the compromise, and that the compromise was made

---

⊂⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

for the sum stated, and that the full sum was paid to Mr. and Mrs. Williams without knowledge or consent of Clark & Sweeton.

The Traction Company filed a plea of privilege, which was controverted by the plaintiffs in the suit, to be sued in Tarrant county, the place of principal office. The Traction Company's railway, as alleged and not shown by the evidence to be otherwise, does not run through Hunt county, and it had no office or agent in that county. The court, after a hearing, overruled the plea of privilege, and the Traction Company excepted to the ruling. The case then proceeded to trial on the merits, resulting in a judgment in favor of the attorneys for the amount sued for against all the defendants in that suit. The evidence sustains the court's findings and judgment in respect to liability as to the Traction Company. The Traction Company has appealed to have the judgment against it reviewed, more especially predicating error upon the overruling of the plea of privilege to be sued in the county of its domicile.

Thompson, Knight, Baker & Harris, of Dallas, for plaintiff in error.

Clark & Sweeton, of Greenville, and Merritt & Leddy, of Dallas, for defendants in error.

LEVY, J. (after stating the facts as above). [1] The result of the appeal depends, we conclude, upon the one point of whether or not the plea of privilege of the Traction Company to be sued in the county of its principal office should have been sustained. And the decision of the question entirely depends upon whether or not it appears from the face of the petition that there is an improper joinder of defendants in the action. For subdivision 4 of article 1830, Rev. Stat., expressly provides that where there are two or more defendants residing in different counties, the suit may be brought in any county where any one of the defendants resides. In case, therefore, that the Williamses, residents of Hunt county, were necessary or proper parties to the cause of action as it appears from the face of the petition, the plea was properly overruled; otherwise, the plea should have been sustained.

[2] It is a primary law, in determining the joinder of defendants, that the contractual obligation sued on, as defined by law, is in its nature joint or several, or joint and several. If the obligation, as defined by law, is several, in all such cases the plaintiff's claim, if any, against each defendant is in the nature of a separate claim, and no joinder of defendants is permitted; for there is no entirety of obligation as against the several defendants. "It is not sufficient," quoting from Danciger v. Smith (Tex. Civ. App.) 229 S. W. 909, "as contended by appellants, to show a valid cause of action against each defendant, or to show a liability in the alternative. The rule is that: 'Causes of action brought upon different contracts cannot be joined unless each affects all of the defendants alike, and it is not sufficient to authorize a joinder that the several contracts of the different defendants relate to the same subject-matter.' If there is not a joint liability, the statutory rule that where two or more defendants reside in different counties, suit may be brought in any county where any of the defendants reside, does not apply, and, in such case, it is error to permit the plaintiff to prosecute his separate causes of action against all of the defendants as if same were joint."

As these fundamental rules must be applied in each case according to the action pleaded, it becomes necessary to consider the particular petition in this case and give it proper legal effect. While the prayer of the petition was for "judgment against the defendants jointly and severally," the language of the prayer would not be conclusive that the obligation sued on was joint and several, if the facts alleged do not have that legal effect attaching to them. The petition first sets out facts showing personal injuries suffered by Mrs. Williams through the negligence of the traction company, and the contract of employment of the attorneys by which they were to have one-third of any sum of money realized or received as a compromise of the claim without trial, or 40 per cent. of the amount of the judgment rendered in the trial of the case. The suit was filed in court, prepared and set for trial on May 10, 1923. The petition then sets up "that the defendant, Northern Texas Traction Company, on or about May 1, 1923, fraudulently settled with the defendants F. M. Williams and wife, Lula L. Williams, said suit without notice of any character to, or without conferring with, said Clark & Sweeton; that said traction company, acting by and through its agents, and with full knowledge of the assignment and transfer by the defendants F. M. Williams and Lula L. Williams to plaintiffs of a portion of said cause of action, paid to said defendants F. M. Williams and Lula L. Williams the sum of $1,500 in settlement of said claim, and obtained their release therefor."

Standing, as the allegations show, upon the compromise settlement in the amount of $1,500 being reasonable and correct, the plaintiffs in the suit then assert the right to have one-third of the sum of money in virtue of an assignment to them by Williams of that designated portion thereof. The entire action is predicated upon the assignment as well as the compromise being valid and effective as to all parties, and being an enforcible obligation existing in favor of the assignees as to a one-third portion of the money. The default in respect thereto, as alleged, was that "the Traction Company"

"fraudulently" or wrongfully "settled with" and "paid" to "F. M. Williams and Lula L. Williams the sum of $1,500." In other words, by intendment, the averments are to the effect that the Traction Company, "with full knowledge of the assignment," and "without notice to" or consent of the attorneys, at a date after the compromise, wrongfully paid the attorneys' portion to Mr. and Mrs. Williams, who were persons not entitled or authorized to collect and receive it. It would appear to be a cause of action only against the Traction Company, unless the petition should be construed, in view of the prayer, as by intendment, as meaning to make claim also against Mr. and Mrs. Williams for having, "without notice" or consent, wrongfully collected and received the one-third portion in defeat of the right of the plaintiffs to their portion of the sum of money. But either construction placed upon the petition would present the question of proper joinder of parties defendant. Hence, in the special facts alleged, (1) were the attorneys, being the only assignees of a portion of the particular sum of money, legally required or not to join both the assignors and the Traction Company in the action on the assignment; and (2) was there or was there not a tort pleaded legally classed as a joint tort?

[3] The legal effect of the assignment, which is the basis of the suit, is material to consider; for no ground of action would remain if the allegations as to the contract of assignment were stricken out or not considered. As between the attorneys and their client, one-third of the particular sum of money belonged, without doubt, in good conscience and equity, to the attorneys. It is within the fixed rule that an agreement between client and attorney, by which the attorney is to have for his services a fixed portion of whatever amount of money shall be realized or received, whether on settlement or without settlement, on account of such claim as shall be put in suit, whether of tort or contract, constitutes an equitable assignment pro tanto. The doctrine is fully laid down in Story Eq. Jur. § 1040, and in 3 Pomeroy Eq. Jur. § 1280. The rule is followed in this state. Harris Co. v. Campbell, 68 Tex. 22, 3 S. W. 243, 2 Am. St. Rep. 467; Clark v. Gillespie, 70 Tex. 513, 8 S. W. 121; Railway Co. v. Vaughan, 16 Tex. Civ. App. 403, 40 S. W. 1065; Railway Co. v. Miller, 21 Tex. Civ. App. 609, 53 S. W. 709; Railway Co. v. Stubbs (Tex. Civ. App.) 166 S. W. 699; Railway Co. v. Wood (Tex. Civ. App.) 152 S. W. 487; Electric Co. v. Chancellor & Bro. (Tex. Civ. App.) 229 S. W. 649; Wheeler v. Fronhoff (Tex. Civ. App.) 270 S. W. 887. Being, as it is, an "equitable assignment pro tanto" of the particular sum of money, the interest therein is not merely a lien or charge, but in the nature of property vesting absolutely in the assignee attorneys. As laid down in Pomeroy, supra:

"Equity recognizes an interest in the fund, in the nature of an equitable property, obtained through the assignment, or the order which operates as an assignment, and permits such interest to be enforced by an action, even though the debtor or depository has not assented to the transfer. It is an established doctrine that an equitable assignment of a specific fund in the hands of a third person creates an equitable property in such fund. If, therefore, A has a specific fund in the hands of B, or in other words B, as a depository or otherwise, holds a specific sum of money which he is bound to pay to A, and if A agrees with C that the money shall be paid to C, or assigns it to C, or gives to C an order upon B for the money, the agreement, assignment or order creates an equitable interest or property in the fund in favor of the assignee C, and it is not necessary that B should consent or promise to hold it for or pay it to such assignee."

And quoting further:

"The agreement, direction or order being treated in equity as an assignment, it is not necessary that the entire debt or fund should be assigned; the same doctrine applies to an equitable assignment of any definite part of a particular fund."

[4] As assignees having dominion over the assigned portion, the attorneys required no authority or consent to authorize them to collect and receive their fixed portion of the particular debt, and the debtor traction company had no authority or right to refuse payment or to settle and pay that fixed portion to any one but the assignee attorneys. And, after notice of the assignment was given to the debtor, in this case the traction company, such assignment became so far complete as to vest title absolutely in the attorneys as assignees, as against attaching creditors of the assignors, and collusive agreements of the assignors and the debtor. Seiter v. Marshall, 105 Tex. 205, 147 S. W. 226; Milmo Nat. Bank v. Convery (Tex. Civ. App.) 27 S. W. 829; Neely v. Bank (Tex. Civ. App.) 61 S. W. 559; 2 R. C. L. p. 622; 5 C. J. p. 934. As held, after notice of the assignment, "the position of defendant (the debtor) was that of any person paying a debt to the original creditor, instead of the assignee whose rights were known." Railway Co. v. Ginther, 96 Tex. 295, 72 S. W. 166. It follows that the elements and features of joint ownership of the fund are not existing by intention of the parties or through legal operation of the assignment. There is a distinct severance of the shares of the assignors and the assignees, and their respective interests are held in severalty and not jointly. The attorneys were in the position of substituted payees of one-third of the debt. The doctrine, then, applied to this case, would authorize the attorneys to maintain

the suit on the assignment in their name only against the Traction Company for their one-third interest. But, in the special facts, the clients would not be either necessary or proper parties defendant. The Traction Company having paid, as alleged, the clients their portion of the money, there is no remaining liability in the clients to be affected by the judgment. The clients, under the doctrine, have no legal or equitable interest remaining in the fixed portion assigned to the attorneys, and consequently a decree is not necessary to foreclose their interest. They were holding in severalty, and not jointly. And passing by assignment the property or title to the fixed portion, as is the effect, the clients are not legally liable as guarantors of that sum of money, in the absence, as here, of express provision for ulterior liability. Hudson v. Morris, 55 Tex. 595.

[5] Although the clients received in payment more than their portion, yet, as to the attorneys, such voluntary and unauthorized overpayment would not legally constitute a joint liability, for the act of neither party, jointly or severally, would operate to deprive the attorneys of their right to enforce the payment against the Traction Company. The Traction Company could not legally defend against a mere voluntary and unauthorized payment of the attorneys' portion of the money to the original debtor, after notice of it, any more so than it could against some third person. 5 C. J. § 95, p. 934; Rollison v. Hope, 18 Tex. 446; Co-op. Ass'n v. Eubanks (Tex. Sup.) 18 S. W. 699. After notice the debtor deals with the assignor at his peril. 4 Cyc. p. 90. It is only in case the debtor makes payment of the full sum of money to the assignor before notice of the assignment that the payment will be valid against the assignee. 5 C. J. § 148, p. 960. And if, after assignment and notice, the assignor should collect the full sum of money upon agreement with the debtor that he will pay the assignee his portion thereof, under such circumstances as to authorize suit upon such agreement, still such special facts are not alleged and become immaterial, since we can only consider the allegations in the face of the petition.

[6, 7] Would it be a tort for which an action would jointly lie for the clients to wrongfully take and receive from the traction company more than their portion of the money due them, to the extent of the attorneys' portion of the sum? The act of the clients, as to the attorneys, would not occasion the latter a legal injury or damage. It would not release the attorneys' rights, and would not legally revoke or discharge their assignment of their portion of the fund. The traction company would nevertheless remain liable to the attorneys on the assignment, and would not be relieved of the liability by the act of voluntary and wrongful overpayment. It is the fundamental rule, as applied to torts, that unless the tort as pleaded is legally classed as a joint tort, in the sense of community of wrongdoing, defeating some right of the plaintiff, there cannot be a joinder in one action of the several distinct tort-feasors. 30 Cyc. p. 122. And also, to be an actionable tort, there must be a legal injury inflicted otherwise than by a mere breach of contract. We therefore conclude that whatever liability the attorneys can urge against each defendant, a joint liability, as defined by law, cannot be predicated upon the special facts pleaded, and, as a consequence, the Traction Company's plea of privilege was improperly overruled.

The judgment is reversed and the cause remanded, with instructions to transfer the suit as to the Traction Company to the proper court of appellant's domicile.