THE ROBERTS COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5524.   Promulgated May 2, 1945.

*John H. Freeman, Esq.*, for the petitioner.
*Frank B. Schlosser, Esq.*, for the respondent.

1

4

HARRON, *Judge*: The controversy in this proceeding arises over the proper basis to be used by petitioner in computing the gain realized by it from the sale of certain properties in each of the taxable years. Respondent has determined that the transaction under which petitioner acquired the properties in 1937 was a nontaxable exchange under section 112 (b) (5) of the Internal Revenue Code, and that, under section 113 (a) (8) of the code, petitioner's basis is the same as it would have been in the hands of its transferors, which, in the deficiency notice, respondent determined to be $5 per acre. Petitioner on the other hand contends that the transaction in 1937 was a taxable exchange, and that its basis was the cost of the properties, which it claims was $10 per acre.

Section 112 (b) (5) provides that "No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange. * * *" Section 112 (h) defines control as meaning "the ownership of stock possessing at least 80 per centum of the total combined voting power of all classes of stock entitled to vote and at least 80 per centum of the total number of shares of all other classes of stock of the corporation." Petitioner takes the position that section 112 (b) (5) is inapplicable for two reasons: First, that the transferors were not in control of petitioner immediately after the exchange; and, secondly, that each transferor did not receive stock substantially in proportion to his interest in the property prior to the exchange. The major premise for these contentions is that the four Roberts brothers were the only transferors of the properties to the petitioner. Petitioner argues that, under Texas law, upon the death of a decedent title to real estate descends to the heirs or devisees, subject only to being divested by conveyance of the administrator or executor pursuant to law to pay debts or to accomplish other proper purposes of administration. Revised Civil Statutes of Texas (1925), art. 3314. It claims that in 1937 each of the four brothers owned a 25 percent interest in the properties transferred, or a total interest of 100 percent, and that immediately after the exchange they owned only an aggregate of 5,726 shares out of a total of 10,000 shares, or only 57.26 percent of the total shares issued. Thus, it is argued that they were not in control of the corporation immediately after the exchange. Petitioner also points out that Frank received only 6.98 percent of the stock for his alleged 25 percent interest in the property

transferred and that George received only 7.2 percent of the stock for his interest. Respondent contends that the amount of capital stock received by each of the four brothers was in exact proportion to his interest in the property prior to the exchange. He argues that the brothers, although owning the entire legal title to the properties, were not the only transferors, since the attorneys, who owned an interest of 35 percent of whatever John and Benjamin recovered, were also transferring their equitable interests in the properties in exchange for some of petitioner's stock. The issue, therefore, turns upon the meaning of the word "property" as used in section 112 (b) (5).

We have heretofore held that the word "property" as used in what is now section 112 (b) (5) comprehends those interests which a court of equity would recognize as equitable assignments. *F. L. G. Straubel*, 29 B. T. A. 516. In that case, although the legal title to the property transferred was vested in one individual, we held that a valid oral assignment of equitable interests had been made by that individual to his brother and son, which could be recognized under section 112 (b) (5). Here, by parity of reasoning, if the contingent fee agreement between the two Roberts brothers and their attorneys amounted to a valid equitable assignment of an interest in the Texas lands, then the principle of the *Straubel* case, *supra*, would apply. Neither of the parties has briefed the question, but independent research indicates that, under Texas law, such an agreement does amount to an equitable assignment upon successful completion of the litigation. A summary of the applicable Texas law is set forth in *Northern Texas Traction Co.* v. *Clark & Sweeton* (Tex. Civ. App.), 272 S. W. 564, as follows:

It is within the fixed rule that an agreement between client and attorney, by which the attorney is to have for his services a fixed portion of whatever amount of money shall be realized or received, whether on settlement or without settlement, on account of such claim as shall be put in suit, whether of tort or contract, constitutes an equitable assignment pro tanto. The doctrine is fully laid down in Story, Eq. Jur. § 1040, and in 3 Pomeroy Eq. Jur. § 1280. The rule is followed in this state. *Harris Co.* v. *Campbell*, 68 Tex. 22, 3 S. W. 243, 2 Am. St. Rep. 467; *Clark* v. *Gillespie*, 70 Tex. 513, 8 S. W. 121; *Railway Co.* v. *Vaughan*, 16 Tex. Civ. App. 403, 40 S. W. 1065; *Railway Co.* v. *Miller*, 21 Tex. Civ. App. 609, 53 S. W. 709; *Railway Co.* v. *Stubbs* (Tex. Civ. App.) 166 S. W. 699; *Railway Co.* v. *Wood* (Tex. Civ. App.) 152 S. W. 487; *Electric Co.* v. *Chancellor & Bro.* (Tex. Civ. App.) 229 S. W. 649; *Wheeler* v. *Frouhoff* (Tex. Civ. App.) 270 S. W. 887. Being, as it is, an "equitable assignment pro tanto" of the particular sum of money, the interest therein is not merely a lien or charge, but in the nature of property vesting absolutely in the assignee attorneys.

At the time the contingent fee agreement between John and Benjamin Roberts and their attorneys was entered into, the estate of Martha E. Roberts had direct and contingent claims against it totaling $186,000, and if those claims were collected the estate might be rendered

insolvent. It was against this background that John and Benjamin agreed to pay the attorneys 35 percent of whatever was recovered from the estate by the two sons. As a result of the efforts of the attorneys, all claims against the estate were disposed of by the late spring of 1937, and by then all debts of the estate and the administration thereof had been completed. All that was left was to distribute the assets of the estate. By decedent's will, each of the four sons was entitled to 25 percent of those assets. However, Frank Roberts, the executor, had apparently advanced to himself, during the period of administration, substantial amounts against his share of the estate, so that at the time of distribution John and Benjamin were together entitled to 66.28 percent of the Texas lands. This percentage represented the recovery by John and Benjamin, and their attorneys owned, in equity, 35 percent of 66.28 percent of the Texas lands, or a total of 23.198 percent of those lands. When John and Benjamin transferred their legal interest in the Texas lands, they were conveying in behalf of the attorneys and themselves. In exchange for the conveyance of the attorneys' interest to petitioner, the attorneys received 2,320 shares of petitioner's stock, or 23.20 percent of the total issued stock. When that percentage is added to the 57.26 percent owned by the four brothers, it is apparent that more than 80 percent of petitioner's stock was issued to the transferors, and the control requirement of the statute is met.

The rationale of this holding disposes of petitioner's second contention, namely, that each transferor did not receive stock substantially in proportion to his interest in the property prior to the exchange. At the time the partition agreement was executed, Frank did not own a 25 percent interest in the Texas lands, as petitioner contends. The amounts which he had previously advanced to himself were merely applied against his one-fourth interest in the assets of the estate, which included the Texas lands, and that one-fourth interest in the Texas lands had diminished to an interest of only 6.98 percent. The facts do not show the amounts which Frank had previously advanced to himself nor the method whereby the four brothers agreed upon the allocation of the assets of the estate. Under the circumstances, the reasonable inference is that Frank's advancements in the prior years had so reduced his interest in the Texas lands that at the time of the transfer to petitioner that interest amounted to only 6.98 percent. The reduction of Frank's interest necessarily increased the interests of the other brothers. In any event, the burden of proving that Frank owned more than a 6.98 percent interest in the Texas lands at the time of the exchange was upon petitioner, and it has not sustained that burden. This also applies to the interests of the other brothers.

The only other question remaining pertains to the interest of George H. Roberts. Prior to the exchange he owned a 26.74 percent interest

in the Texas lands and was entitled to receive 26.74 percent of petitioner's stock, or 2,674 shares. The partition agreement under which George was entitled to receive these shares of petitioner's stock was executed on May 10, 1937. On July 2, 1937, he instructed that 1,954 shares of the stock which he was to receive should be issued to his wife, Carrie Munson Roberts, as her separate property. He had not, however, conveyed or assigned to his wife any interest in the lands which were the subject of the exchange. She was not entitled to any of petitioner's stock by virtue of the agreement of May 10, 1937. The 1,954 shares of stock which she received came to her as a gift from her husband. Under these facts, the transaction must be viewed as if the 1,954 shares of stock first came to the husband, who then gave them to his wife. The effect of section 112 (b) (5) can not be evaded by an anticipatory device of this nature. See Mertens, Law of Federal Income Taxation, vol. 3, § 20.43, pp. 163, 164. The case of *Heberlein Patent Corporation* v. *United States*, 105 Fed. (2d) 965, is distinguishable, for there the instructions relating to the gifts of stock in the new corporation were given prior to the execution of the agreement under which the new corporation was to be organized.

Petitioner also makes the alternative contention that, even if the transaction in 1937 were a nontaxable exchange under section 112 (b) (5), nevertheless, the basis of the property to it would be higher than the $5 per acre used by respondent. On brief, the respondent concedes this to be true, and he agrees that 23.20 percent of the land sold during each of the taxable years should be valued at $10 per acre, which was the fair market value of the land throughout 1937. This percentage represents the interests of the attorneys in the land, and was a capital expenditure made by John and Benjamin Roberts. By the same token, the $5,000 paid by George H. Roberts to his attorney is a capital expenditure and represents additional cost of George H. Roberts' interest in the land.

At the hearing petitioner attempted to establish by the witness Perlitz that the four sons in arriving at a division of the estate properties placed a valuation of $10 per acre on the Texas lands. Apparently it was intended to use this testimony as a basis for an argument that Frank, who received only a 6.98 percent interest in the land, sold the difference between that amount and the 25 percent interest he was entitled to receive under his mother's will to his three brothers at a price of $10 per acre. This testimony, however, was rejected because Perlitz was unable to testify as to the facts concerning the indebtedness of each brother and the values they ascribed to different assets in the estate. Perlitz represented only two of the brothers and he did not participate in all of the negotiations with respect to the partition agreement. He had no notes or other records of the meetings in which the brothers participated. Even if this testimony had been

admitted, however, petitioner's argument would have availed it nothing, because there was no sale from Frank to the other brothers. All that was done was to divide the assets, and, because Frank in the past had withdrawn larger amounts from the estate, his share of the distribution was considerably less than the shares of the other brothers.

Accordingly,

*Decision will be entered under Rule 50.*