Wiieeleb, J.
This was a suit brought to the spring term, 1844, of the district court, to recover of the defendant the value and hire of a negro girl.
The petition contains the averments that the defendant hired of the plaintiff “ a negro woman named Mehala, between fifteen and sixteen years old, sound and well conditioned,” the property of the plaintiff; that the defendant was to pay the plaintiff for two months’ work of said Mehala, and at the end of that time to return her to the plaintiff, “ in like good condition;” and that the time of the commencement of the said hiring was the 28th day of August, 1842; that the defendant, though requested, has not returned the negro woman — but has neglected and refused so todo; and that he (the plaintiff) “is informed, and had reason to believe, that his said negro woman Molíala is dead, caused by the ill and inhuman treatment of the said Mitchell.” The plaintiff avers that, by reason of the promises, he has sustained damages to the value of the negro woman, $500, and of her hire, $200, for which he prays judgment.
The answer of the defendant is as follows:
“ Defendant, by attorney, appears and demurs generally to the petition of the plaintiff, and, for answer, says that all matters and things in plaintiff’s petition contained are untrue, for this, that the *(317) negro Mehala was lawfully re-delivered at tlie end of the term to plaintiff; that if plaintiff has suffered any loss, he has accepted satisfaction for the same from the defendant, and that all hire has been punctually paid; and defendant pleads the statute of limitation. Defendant, by leave of the court, answers and says that he re-delivered said negro when he ought so to do.”
There was testimony tending to show that the negro girl had come to her death on or near the way leading from the residence of the defendant to the plaintiff; and from what cause does not satisfactorily appear. A witness, Noqndtree, who was an “ overseer ” for the defendant, testified to having chastised the girl himself on two or three occasions, about the time of the last account we have of her in the possession of the defendant, and of also having'seen the defendant-correct her; but, as he says, “not in a manner to injure her;” that he and defendant (about the time he chastised the girl) left for the army (being the time when the country was invaded by Gen. ’W'oll). That defendant, on starting, addressed a note to the plaintiff, which lie left with a Mr. Larkey, to be sent by the girl; that Larkey was left in control of the plantation of defendant. There was proof of the hiring, and testimony that the girl was sound, “active and sprightly and headstrong.” There was also proof of the value of the girl, and that the plaintiff had received some property from the defendant, valued by the witness at $35, but on what account it was received — whether in payment of hire, or in satisfaction of damages, does not appear.
It was proposed in behalf of the plaintiff, to pro've “ the act or admission or both” of Larkey; but the testimony was objected toby the defendant and rejected by the court. The court charged the jury that the hirer must take the same care of a hired slave that a prudent and humane master is bound to take of his own; that such care is common or ordinary attention, and the hirer is responsible for common or ordinary negligence. The onus probandi of such negligence rests upon the plaintiff, otherwise the sudden death or loss of the hired slave arising from the act of God would be chargeable upon the hirer.”
The jury returned a verdict for the defendant on which was rendered a judgment “that the suit be dismissed.” And the cause comes before us on appeal.
It is singular that the judgment on a verdict should have been one of dismissal. But though manifestly wrong it can afford no ground for remanding the cause; since we are authorized to render such judgment as the court below ought to have rendered on the verdict, *(318) should we find it supported by the evidence and law of the case. And this under the issues is the subject of inquiry.
The pleadings are extremely defective in respect to certainty, perspicuity and accuracy in setting forth the facts which coustitnte the cause of action and grounds of defense. Facts are not stated directly with the time, place and circumstances attending and giving character to them; but indirectly and by reference and conclusions drawn from assumed facts are- stated, rather than the facts upon which the conclusions arise. For instance, that the plaintiff delivered the girl to the defendant pursuant to the contract of hiring, is a fact material to his cause of action; yet it is not averred, and can be arrived at only by inference from the averment that the defendant agreed to redeliver. Accord and satisfaction isa ground of defense and justification relied on by the defendant; yet he does not state when, where or liow accord and satisfaction was made and accepted by the plaintiff. This generality is contrary to all rule and principle and ought to be discountenanced. The object of pleading is to apprise the court and the opposite party of the facts on which the pleader intends to rely, as constituting his cause of action or grounds of defense. And the averments should set forth the facts relied on with such precision, clearness and certainty, as to apprise the opposite party of what he will be called upon to answer, and what is intended to be proved, so that the evidence introduced may not take him by surprise. Such certainty is essential in order that the facts relied on by either party may be understood by the party who is to answer them, by the jury who are to ascertain their truth, and by the court who is to give judgment upon them. 2 Gowp. 682. Where there is not such certainty, objections to evidence ought to be sustained; for a party ought not to be permitted to prove what he has not averred. More especially is this true in reference to the pleadings under our system; where the technical general issues of the English system, adapted to their forms of action, each constituting the foundation for its own peculiar evidence and defense, are unknown. Under the general issties, as recognized in that system, matters of defense admissible in one form of action may be inadmissible in a different form of action. But with us, neither the distinctions of the forms of action, nor the general issues exist; but our pleadings really aré or are intended to be, what the English pleadings are defined to be; the statement in a legal and logical manner of the facts which constitute the plaintiff’s cause of action, or the defendant’s ground of defense, or the written statement of those facts, intended to he relied on, as the support or defense of the party in evidence. 3 Term, 159. A general traverse *(319) or denial in our system is not to lay a foundation for tbe introduction of new affirmative matter in evidence; but simply to throw upon the plaintiff the burden of proof. Its office here is not to let in proof of independent facts, which shall constitute a defense; but to require the plaintiff to prove the truth of every averment, material to his cause of action. But if the defendant is in the possession of facts which, admitting the averments in the petition to be true, show that the plaintiff still has no cause of action; as that (in the present instance) the slave had come to her death without any fault in him or his agents, and that therefore, he is excused from restoring her to the owner, and exonerated from any responsibility in consequence of his failure, these facts Should be specially averred and pleaded; otherwise the defendant ought not to be permitted to avail himself of them in proof. For, as was said by Mr. Justice Story, in Harrison v. Nixon (a suit in chancery), 9 Pet. 503, “The proofs must be according to the allegations of the parties; and if the proofs go to matters not within the allegations, the court cannot judicially act upon them as a ground for its decision; for the pleadings do not put them in contes-tation. The allegata and probata must reciprocally meet and conform to each other.”
The answer before us falls short of both the definition and object of pleading. ITow could the plaintiff have been apprised by the averment of the defendant that he “ redelivered said negro when he ought so to do” or “that she was lawfully redelivered;” that he intended under this averment to adduce evidence to show that the negro had come to her death by “the act'of Hod” and without his fault; and that, in law, he was thereby as effectually justified and protected as if in point of fact he had redelivered the negro, according to his contract? Yet this, doubtless, was what the defense relied on. So far, however, was the answer from apprising the plaintiff of the facts of this defense, that it contains averments repugnant to them, since it alleges that the negro was redelivered; when the facts intended to be relied'on in proof were, that she neither had been, nor could be restored to the plaintiff.
Instead then of apprising parties of the fapts they must be prepared to meet and repel, such pleadings would be calculated to ensnare and entrap them; and by averments not intended to be proved, to mislead and cause parties to neglect to prepare themselves with such rebutting or explanatory evidence as may be within their power.
The rules governing judicial proceedings should be such as to promote fairness, candor and probity in every stage of a cause; and to attain the ends of justice with the least possible indirection; and not *(320) such as to encourage duplicity, evasion and deception, and to elevate subtlety, craft and cunning to tlie vantage ground of learning, talent and candor. Tet such would be the tendency of such rules as should not require the pleader to state fairly and specially the facts relied on to sustain his action or defense.
The pleadings in the case before ns are not obnoxious to more serious censure in the particulars which have led to these observations than in very many cases we have had occasion to consider. The defects indicated are not, it is presumed, the result of design, but rather of a want of attention to the requirements of our system; and perhaps in some degree, of the confusion which tlie attempt to preserve ancient venerated forms, rendered familial by long acquaintance, habit and education, is calculated to occasion; and has very extensively introduced into the administration of our laws, to which those forms are inapplicable. We have conceived it necessary to mark the defects more particularly in the present instance, as they will materially influence our decision. But it is in reference to the manner of conducting the trial, the evidence and the judge’s charge, that it has become material to consider the pleadings, and not with the view to ascertain, by a reference to their contents alone, their legal sufficiency. That was not questioned by exceptions below, bringing them directly in view, and invoking judgment upon them. If by the words “demurs generally to the petition,” we are to understand that exception was taken, it does not appear to have been relied on, and we must presume it to have been waived, since there is in the record no evidence that the court considered and adjudged the question of the sufficiency in law of the petition.
It will be seen that the answer contains no denial of the averments of the petition, and presents no issue upon it, otherwise than by setting up new affirmative matter, in avoidance of the legal consequence of the cause of action sued on. It contains, indeed, the statement that the “ matters and things in the petition contained are untrue,” but the averment is qualified by an explanation of what is meant by the expression “untrue,” showing that it is not intended to be under stood in tlie sense of an unqualified denial; or in'auy sense inconsistent with the truth of the plaintiffs statement of his cause of action. On the contrary, the answer by clear and necessary implication admits the truth of that statement. It relies on a compliance m law by the defendant, with his contract, and accord with satisfaction for the injury occasioned by its breach. But liow could the defendant have performed a contract which be had never made? or make reparation for an injury never occasioned? Without recurring to the *(321) principle that every averment must be taken most strongly against the party making it, for the plain reason that every one must be presumed to make that statement which will be most favorable to himself (a rule of reason alike applicable in every system of pleading), it is obvious that the answer must be regarded as admitting the cause of action as set forth in the petition. The petition must be taken as true in every other sense than that in which it has been denied, and in which the defendant assumes to prove affirmatively the facts in which his conclusion of its untruth rests; a sense not inconsistent with but tacitly and by necessary implication, admitting the absolute verity of its statement of the cause of action.
Under the issue then presented by the record, all the material facts well pleaded by the plaintiff must be taken as true, and the defendant must be regarded as assuming the burden of proof. Tet the trial seems to have been conducted under the supposition by the court and the parties, that the affirmative and the burden of proof were with the plaintiff. Had the effect of the admission of the cause of action been counteracted by a general traverse or denial, this would have been correct as to proof of the negligent or wrongful act of the defendant. It would then have devolved on the plaintiff, first, to prove the contract on which his action was founded; and after the defendant had proved the death of the slave, or the loss or accident which rendered a compliance on his part impossible, it would then have been with the plaintiff to prove the negligence or wrongful act of the defendant which occasioned the loss or injury, or some deviation on the part of the defendant or his agents, from his duties under the contract, by which his responsibility to the plaintiff arose. 7 Cow. 760. But when the defendant had, by his answer, admitted the cause of action as set forth in the petition, the only inquiry for the jury was, whether the defendant had established affirmatively either of the grounds of justification embraced in his answer. This being the issue, it was error in the court to charge the jury that the “ onus prohandi of negligence rested upon the plaintiff.” This, as we have seen, could only have been correct, had the defendant first shown the death, loss, or accident by which he was prevented from complying with his contract to redeliver. Acting under the misapprehension as to the issues and the law, the defendant not only made no offer to account for the absence, by death or other casualty, of the slave; but absolutely sought to conceal the cause of her absence, by objecting to testimony conducing to show the fact and manner of her death. It is impossible to resist the belief that the facts connected with the disappearing of the slave were more accessible to him than to the plaintiff; and his *(322) neglect to furnish them, not to say his attempt to conceal them, is, to say the least of it, suspicious conduct. But for the misapprehension of the issues, it is not improbable that the jury would have bad before them other and more satisfactory evidence; and that a different verdict might have been the result.
The evidence supports the contract as set forth in the petition; but it does not establish any ground of defense embraced in the answer. The most that can be said is that it tends remotely to that end. Tet had not the court and the counsel misconceived the issues and. the law and thereby perhaps misled the jury, we should be disinclined to disturb the verdict, since there was evidence conducing in some degree to its support. Where, however, it appears that the law of the case has been mistaken by the court and there is reason to believe that the verdict may have been influenced by such mistake, the judgment will be reversed and the cause remanded, unless it be apparent that the justice of the case has nevertheless been attained, and that, had the law been rightly understood, the result must still have been the same.
It is not essential to notice the various exceptions and causes urged for reversing the judgment, as they may not again arise in the investigation below, and are immaterial to the view we have taken. Of the exception, however, to the decision rejecting evidence of the acts of Larkey, it may. be proper for the guidance of the parties in the trial hereafter to be had, to remark, that for anything that appears in the record, the evidence was properly rejected. Larkey may have been himself a competent witness to the facts sought, and there is reason to believe that the material facts of the defense, if any valid defense existed, must have been known to him, since the last account we have of the girl leaves her in his custody and control, as ' agent of the defendant. Tet he is not introduced as a witness, nor is his absence accounted for, and until this had been done, to have received evidence of his admissions would have been to violate the existence of better evidence of the disputed facts in the possession of the party offering such inferior or secondary evidence. Had the absence of Larkey been accounted for, the evidence would not necessarily have been obnoxious to the objection of the fraudulent concealment arising from some secret and sinister motive for the suppression of the better evidence. Its admissibility would then have depended upon the attendant facts and circumstances. Hence the question proposed, with such of these as could have a tendency to elucidate the question of whether the acts and admissions sought to be proved were so connected with the transaction as to constitute a part of the res gestee, should *(323) appear in the record, otherwise it can not be seen whether the court erred in rejecting the evidence. It may have been irrelevant or mere hearsay and hence incompetent.
Should the parties so amend their pleadings as more clearly to present the merits of the controversy, the questions we have considered may not arise upon a future trial. It is not intended to anticipate those which may be presented, but only to mention some general principles applicable to the cause under the appropriate issues.
The hiring for a definite period being admitted or proved, the law implies a promise to redeliver the slave when the time had elapsed. 2 Const. (S. C.) 374; 1 Bailey (S. C.), 358. By the contract of hiring, it was incumbent on the defendant to treat the hired slave with due care. Less than ordinary care and diligence would render him responsible for any loss or injury which might accrue to the plaintiff. It was his duty strictly to observe and respect the contract, and not to employ her in any other manner or for any longer period than that for which she had been hired. 1 Const. (S. C.) 121. He was bound to observe towards Jhe slave, the same humane and careful treatment which a discreet, humane and prudent master would observe in the treatment of his own slaves, and to restore her to the plaintiff in as good condition as he had received her, unless her condition had become deteriorated without his default or negligence. And he is responsible for the conduct of his agents and those acting under him, as for his own conduct. When the period of the hiring had elapsed, or when called upon, it was his duty to redeliver the slave or to account for his default, by showing the death of the slave or some casualty which placed it beyond his power to redeliver her. But when such casualty or accident is shown, the burden of proof of the negligence is thrown upon the plaintiff, and the defendant will not be bound affirmatively to prove that he used reasonable care. 3 Kent Com. 587. Whether the requisite degree of care, that is, such at least, in respect to this species of property as is exercised by a discreet, prudent and humane man in the management of his own affairs, has been observed by the defendant, must depend upon the particular circumstances of the case as they shall appear in evidence.
Our principal difficulty in determining upon a reversal of the judgment has arisen from the averment by the plaintiff in his petition that he “ is informed and has reason to believe that his said negro woman, Mehala, is dead, caused by the ill and inhuman treatment of the said Mitchell.” Had there been a general denial negativing this averment (if it may be regarded as an averment and not as mere sur-plusage) there can be no doubt that the burden of proof of the death *(324) of the negro,,the negligence of the defendant, and in short, of every fact necessary to a recovery by the plaintiff would have been thrown upon him by this averment. And this illustrates the truth of the observation of Mr. Justice Buller, that it is the duty of a good pleader not to clog the record with unnecessary matter, and thereby throw a greater burden of proof on his client than the law requires. Since, however, it is so manifest that the parties did not try the issues presented by the record, arid that they were entirely misapprehended by the, court, we have thought that the justice of the case would better be attained by a new trial.
It appearing that there is error in the charge of the judge and that the jury may have been misled thereby, and not being satisfied that justice has been done between the parties, we are of opinion that the judgment be reversed and the cause remanded for further proceedings in the district court, in accordance herewith.