**LATSON v. J. WEINGARTEN, Inc.**

No. 10077.

Court of Civil Appeals of Texas. Galveston.

April 25, 1935.

Robt. L. Sonfield and Lawrence H. Kenner, both of Houston, for appellant.

Vinson, Elkins, Sweeton & Weems, of Houston (C. M. Hightower and W. S. Elkins, both of Houston, of counsel), for appellee.

PLEASANTS, Chief Justice.

This suit was brought by appellant against appellee to recover damages for personal injuries alleged to have been caused by the negligence of appellee.

The material allegations of plaintiff's petition are, in substance: That defendant corporation owns and operates in the city of Houston a number of retail stores for the sale of meats, groceries, vegetables, and foods of all kinds, also condiments, toilet articles, and other kinds of merchandise usually carried and sold in such stores; that on or about October 24, 1932, plaintiff entered one of these stores located in his section of the city for the purpose of purchasing groceries, foods, and toilet articles; that he made a purchase in the department where toilet articles are kept and sold; that he then went to the grocery department of the store for the purpose of making purchases therein; "that in order to enter the grocery department it was necessary for plaintiff to pass through a gate constructed of some character of metal similar in looks to metal pipes that revolve on a post, and being constructed of heavy material; that same might be termed an iron turnstile gate; that the gate could only operate in one direction unless some character of spring or lock or ratchet is released or changed so as to permit it to operate in the opposite direction;

that there were certain designated places for entrance to the grocery department and likewise certain designated places for exit therefrom; that plaintiff proceeded to the proper gate for entrance to the grocery department and was in the act of entering same by means of such gate, when, without any character of warning or notice, a man (his name being unknown) on the other side of the gate and in the grocery department, carrying certain bottles (believed by plaintiff to be milk bottles), with force and speed, reversed the gate by some means unknown to plaintiff and used same as an exit from the grocery department; that plaintiff had every reason to believe and did believe that the gate was used only as designated, for the purpose of patrons of defendant's store (of which plaintiff was one) and others entering the grocery department, and that same was not permitted to be used, or used, as an exit from the grocery department; that such person so wrongfully using the gate as an exit is believed by plaintiff to be an employee of defendant or authorized by defendant to deliver milk or other articles of food to it."

It is then alleged that the iron bars of the entrance gate, caused to violently revolve by the person coming out of the grocery department, struck plaintiff on the right leg above the knee with such terrific force as to throw plaintiff over backward on to a truck that had been placed near said entrance and on which there were a number of empty bottles and other articles, and he was thereby caused to· suffer serious and painful injuries, the extent, nature, and duration of which are fully described in the petition, and for which he claims damages in the sum of $20,000, sought to be recovered in this suit. The specific acts of negligence upon which the cause of action is based are thus alleged: "That defendant failed to exercise ordinary care in providing a safe passage for plaintiff into said grocery department, in not maintaining the entrance turnstile gate in such condition that it could not be reversed and used as an exit from the grocery department, in designating the place where plaintiff sought to enter the grocery department as an entrance to same and inviting its patrons to use same, when in fact it could be reversed, and often was, with the knowledge, sanction and consent of defendant, as an exit, all of which constituted gross carelessness and negligence. That defendant was also grossly negligent and careless and failed to use ordinary care in not keeping and. maintaining its premises and said turnstile gate and

entrance into the grocery department in a reasonably safe condition for its customers, patrons and invitees. That the turnstile gate was capable of becoming a dangerous agency and appliance if improperly handled and maintained. That same did become and constitute a dangerous agency and appliance under the circumstance of its use and maintenance. That defendant negligently and carelessly permitted its agents, servants, employees and also other persons to reverse such gate and use it as an exit from the grocery department and to use it in an improper manner, all of which was unknown to plaintiff. That if the accident herein complained of and the resulting injuries to plaintiff did not result alone from the negligence of defendant, its servants, agents and employees, and would not have occurred unless concurred in and contributed to by the acts of a third person, nevertheless defendant is liable therefor as hereinabove pleaded and set forth."

The defendant answered by a general demurrer, a general denial, and by special plea of contributory negligence on the part of plaintiff as a proximate cause of his injury.

Upon the conclusion of the evidence, the trial court granted a motion by the defendant to instruct the jury to return a verdict for defendant, and upon the return of such verdict rendered judgment in accordance therewith.

Under sufficient assignments and propositions, appellant complains of the judgment on the ground that the evidence raised the issue of negligence of the defendant as charged in the petition, shows plaintiff's alleged injuries, and does not show contributory negligence of the plaintiff as a matter of law, and therefore the trial court erred in granting defendant's motion to instruct the jury to return a verdict in defendant's favor.

Plaintiff testified that he went into defendant's store on the date named in his petition for the purpose of making purchases of merchandise kept for sale therein. He further testified, in substance, that there are three gates in the railing which separates the grocery department from the other sales departments in the store; that there was an entrance gate near each end of this railing and an exit gate near the center for the patrons of the store to enter and come out of the department. These gates are marked "Entrance" and "Exit," respectively. The gates are made of iron, and are heavy. They are fastened to an upright iron post

in the center of the opening and revolve like a turnstile when pressed by the hand or body of the person using them. The pivot by which the gate is attached to the post can be so set as only to permit the gate to revolve by pressure from one entering the department, but by raising the pivot the gate can be put in motion by a person coming out of the department. The exit through the gate can only be made on the opposite side of the center post from that on which the entrance is made. The gate through which plaintiff sought to enter the department was marked entrance. He then thus states the circumstances in which he received his injuries:

"Well, just as I intended to walk in this gate, before I got to the gate—well, I walked in the gate rather looking straight ahead, and there was a man, I don't know if he was a milk man or what he was, he had, it looked like a crate, under his left arm, I think it was, and just as I entered the gate, got right even with the gate, and started to walk in, undoubtedly he turned to walk back out the same way I was going in—he was a leap ahead of me, and that thing struck me right on the leg and knocked me down, the gate did.

"Q. When it hit you what did you do? A. I fell outright, back. I caught with my right hand on the iron bar; it jarred my arm and skinned my knee.

"Q. After you fell, did this man continue to come out that gate? A. He stood and looked at me and smiled, then came right by me while I sat up."

He further testified that he had never seen the gate used as an exit gate before this time.

Mr. W. W. Knighton, a witness for the defendant who was employed by the defendant, corroborated plaintiff's testimony as to the kind of gates used in the store for the entrance and exit of patrons of the grocery department. He says the gates were regular turnstiles that work on a ratchet and turn one way; that they could be reversed, but not very easily; that the entrance and exit gates each have a big sign on top designating its use with respect to entrance and exit from the grocery department.

This witness further testified that the Coghill Dairy furnished the milk the defendant sold to its customers in its grocery department; that the milk was brought to defendant's store by the dairyman in a truck, and checked off the truck and brought into defendant's store by witness or some employee of defendant. The witness was then asked: "So if there was anybody handling any milk bottles around there, taking them out in a crate it was an employee of Weingarten's was it?" To this question the witness answered, "Yes Sir."

Son Bonner, a witness for plaintiff, testified, in substance, that he was familiar with the defendant's store in which plaintiff was injured and knew some of the employees in the store; that he formerly ate his lunch there and knew Mr. Knighton, the manager of the store, also knew Mr. Brown, the butcher, Raymond Alexander, a colored porter who worked in the grocery department, Lewis White, another colored porter, and a Mexican named Nick, who worked in the vegetable department. After describing the entrance and exit gates into and out of the grocery department, the witness testified that he had seen these gates reversed prior to October of 1932 by the porter Lewis White and by a cashier in the store named Hicks, and had also reversed them himself; that such reverse use of the gates was made at times when the manager was somewhere in the front part of the store building; that he had seen Mr. Hicks and Lewis White reverse the gates several times, and witness had also reversed them a number of times; that the last time he reversed one of these entrance gates in making his exit from the grocery department was on October 19, 1932.

■ We think this testimony raised an issue of negligence of the defendant as alleged in plaintiff's petition. The gate through which plaintiff sought to enter the defendant's grocery department had a sign inviting plaintiff to enter there, and defendant owed plaintiff the duty to use reasonable care to keep the gate reasonably safe for use by its customers, and if plaintiff was injured as alleged in his petition by the failure of defendant to use such care he would be entitled to recover damages for the injuries thereby caused him.

■ If it be conceded that the doctrine of res ipsa loquitur, invoked by the appellant, is not applicable in this case because plaintiff's petition alleges the specific acts of negligence which caused his injury, the testimony adduced by plaintiff being sufficient to raise the issue of the alleged negligence in the respect above stated, the trial court was not authorized to instruct the jury to return a verdict for the defendant.

■ The testimony fails to raise an issue of negligence of the defendant in installing

reversible turnstile gates in its store. If properly used, these gates are not so dangerous as to bar their being placed in a store where the public is invited to come and trade. But when by the signs on the gates the patrons of the store are informed that certain of the gates are to be used for entrance and others for exit, it then becomes the duty of the owner of the store to use reasonable care to prevent any reverse use of the gates, and if, by such want of care, a patron of the store without any knowledge or warning of such use is thereby injured, the defendant should be held liable.

■ Having reached the conclusion as above stated that the testimony adduced by plaintiff was sufficient to raise an issue of the negligence of the defendant in failing to exercise reasonable care to prevent the use of the gate in such improper manner as to render it dangerous to patrons of the store not informed of such use, it is immaterial what the evidence of defendant's witness was on this issue. The weight and preponderance of the evidence, it matters not how overwhelming it might be in favor of the instructed verdict, cannot justify a trial court in taking a case from the jury. Connor v. Crain (Tex. Civ. App.) 289 S. W. 712; Thomas v. Postal Telegraph-Cable Co. (Tex. Com. App.) 65 S.W.(2d) 282; Stinnett v. Gulf, C. & S. F. Ry. Co. (Tex. Civ. App.) 38 S.W.(2d) 615; Kleising et al. v. Miller et al., 83 S.W.(2d) 732, recently decided by this court; 3 Tex. Jur. § 741.

For the reasons indicated, the judgment of the trial court is reversed, and the cause remanded.

Reversed and remanded.

LANE, Justice (dissenting).

At a former day of this court the majority rendered judgment reversing the judgment of the trial court and remanded the cause. The writer entered his dissent to the conclusions and judgment of the majority.

As I am of the opinion that the statement made in the opinion of the majority of this court does not with sufficient clearness reflect the cause as made by the pleadings of the plaintiff and the proof made, I here submit my views as to the proper disposition of the appeal.

On October 24, 1932, J. Weingarten, Inc., was the owner of a department store in the city of Houston, known as store No. 8. Such store was divided into several departments, each separate from the other. None of the employees of one department had any duty to perform in any other department. One of the departments was a space where groceries were kept for sale. This department is what is commonly known as a self-serving store. There was a place marked "Entrance" where patrons of such department were to enter. There was also a place marked "Exit" where patrons were to leave the department. At the place of entrance and exit there was placed a gate made of iron pipe, known as a turnstile gate; the entrance gate was set upon an iron post, and upon a pivot so as that when pressed from the right of the post and pivot it would revolve from the pressure and permit one to enter the grocery department, but it was so constructed as that it would not revolve so as to permit an exit through it. In other words, it was constructed and intended to be maintained as an entrance to the grocery department only, and not as one for an exit from said department. The owner of the store had employees who worked in their respective departments and not in any of the other departments.

On said October 24, 1932, Clarence Latson entered the store, and after making a purchase in the drug department, approached the entrance to the grocery department for the purpose of entering to make purchases of groceries. Just as he sought to enter, the usual movement of the gate was by some one reversed with such force as to cause it to strike him and seriously injure him.

Clarence Latson, on January 23, 1933, brought this suit against J. Weingarten, Inc., to recover for personal injuries, hospital, and medical services. After making necessary formal allegations, the plaintiff alleged that he entered the store of defendant for the purpose of purchasing groceries, food, and toilet articles; that he made a purchase in the drug department of the store where toilet articles and the like are kept and sold; that he then went to the entrance of the grocery department of the store, where groceries were kept and sold, for the purpose and intention of purchasing certain groceries; that in order to enter the grocery department it was necessary for him to pass through a gate constructed of some character of metal, similar in looks to metal pipes, that revolved on a post, and being constructed of heavy material; that such gate might be termed an iron turnstile gate; "that said gate could only operate in one direction unless some character of spring or lock or ratchet is released or changed so as to permit it to operate in the opposite di-

rection; that there were certain designated places for entrance to said grocery department and likewise certain designated places for exit therefrom; that plaintiff proceeded to the proper gate for entrance to said grocery department and was in the act of entering same by means of said gate, when, without any character of warning or notice, a man (his name being unknown) on the other side of said gate and in said grocery department, carrying certain bottles (believed by plaintiff to be milk bottles), with force and speed, reversed said gate by some means unknown to plaintiff and used same as an exit from said grocery department; that plaintiff had every reason to believe and did believe that said gate was used only as designated, for the purpose of patrons of said defendant's store (of which plaintiff was one) and others entering said grocery department, and that same was not permitted to be used, or used, as an exit from said grocery department; that said person so wrongfully using said gate as an exit is believed by plaintiff to be an employee of defendant or authorized by defendant to deliver milk or other articles of food to it"; that the iron bars of the gate struck him on the right leg with terrific force and he was thrown backward. (At this point the nature and extent of his injuries and damages were alleged.) He then alleged that the injuries and damages suffered by him were due to and the direct and proximate result of "the gross negligence and carelessness of defendant, its agents, servants and employees, one or both, alone or concurring; that defendant failed to exercise ordinary care in providing a safe passage for plaintiff into said grocery department, in not maintaining said entrance turnstile gate in such condition that it could not be reversed and used as an exit from said grocery department, in designating said place where plaintiff sought to enter said grocery department as an entrance to same and inviting its patrons to use same, when in fact it could be reversed, and often was, with the knowledge, sanction and consent of defendant, as an exit, all of which constituted · gross carelessness and negligence. That defendant was also grossly negligent and careless and failed to use ordinary care in not keeping and maintaining its said premises and said turnstile gate and said entrance into the grocery department in a reasonably safe condition for its customers, patrons and invitees. That said turnstile gate was capable of becoming a dangerous agency or appliance if improperly handled and maintained. That same did become and constitute a dangerous agency or appliance under the circumstances of its use and maintenance. That defendant negligently and carelessly permitted its agents, servants, employees and also other persons to reverse said gate and use it as an exit from said grocery department and to use it in an improper manner, all of which was unknown to plaintiff. That if the accident herein complained of and the resulting injuries to plaintiff did not result alone from the negligence of defendant, its servants, agents and employees, and would not have occurred unless concurred in and contributed to by the acts of a third person, nevertheless defendant is liable therefor as hereinabove pleaded and set forth."

Defendant answered by general demurrer, general denial, and pleading contributory negligence on the part of the plaintiff.

A jury was chosen to try the case, but after all the evidence had been introduced and all parties had rested, upon the motion of defendant the court instructed the jury to return a verdict in favor of the defendant. Upon the return of the verdict as directed by the court, judgment was rendered decreeing that Clarence Latson take nothing by his suit, and that defendant go hence without cost and liability, and that the plaintiff pay all costs of suit. From such judgment the plaintiff has appealed to this court.

By appellant's first proposition it is contended, substantially, that since the undisputed evidence shows that the gate in question was under the exclusive control and management of the defendant, J. Weingarten, Inc., and that the accident in question was such as in the ordinary course of events would not have happened if due care had been exercised, the fact of the injury itself will be deemed sufficient evidence to support a recovery against defendant, in the absence of any showing that the injury was not due to defendant's want of care. Wherefore, this case comes within the doctrine of res ipsa loquitur, and should be governed thereby.

The writer is of opinion that the case as made by the plaintiff's petition does not come within the doctrine of res ipsa loquitur, and that such doctrine is not applicable to the case as pleaded.

Plaintiff by his pleadings alleged specifically all the several acts of negligence on the part of the defendant which he alleges resulted in his injuries. In such case, he cannot invoke the doctrine of res ipsa loquitur, and he cannot make out a prima facie

case without proof of the acts or some one or more of the acts of negligence alleged, and that such act or acts were the proximate cause of the accident and injuries. In other words, plaintiff having set forth and alleged specific grounds of negligence on the part of the defendant, which he assigns as the direct and proximate cause of the injuries complained. of, cannot now rely upon the doctrine of res ipsa loquitur, as such doctrine in such cases does not apply.

In Lone Star Brewing Co. v. Willie, 52 Tex. Civ. App. 550, 114 S. W. 186, a case in which a writ of error was denied, it being a suit for personal injuries, the court said: "This is not a case where the doctrine of res ipsa loquitur applies; for the plaintiff, having specifically alleged the acts of defendant's negligence cannot make out a prima facie case without direct proof of actionable negligence, but he must prove the acts of negligence which he averred, and that such negligence was the proximate cause of his injuries. Except in cases where the acts of the defendant speak negligence, it cannot be inferred from the mere happening of the accident."

In Davis v. Castile, 257 S. W. 870, 871, by the Commission of Appeals, it is said: "Where specific acts of negligence are alleged as the cause of the accident, the principle of res ipsa loquitur is not applicable, and the plaintiff cannot make a prima facie case without proof of the acts of negligence alleged, and that such negligence was the proximate cause of the accident. Lone Star Brewing Co. v. Willie, 52 Tex. Civ. App. 550, 114 S. W. 186 (writ refused); Gulf Pipe Line Co. v. Brymer, 59 Tex. Civ. App. 40, 124 S. W. 1007; Smith v. Pennsylvania R. Co., 239 F. 103, 151 C. C. A. 277."

Other cases stating the rule announced by the cases from which we have quoted are Missouri, K. & T. Ry. Co. v. Thomas, 63 Tex. Civ. App. 312, 132 S. W. 974; Wichita Valley Ry. Co. v. Helms (Tex. Civ. App.) 261 S. W. 225, 227; Davis v. Texas Co. (Tex. Civ. App.), 262 S. W. 129; Cecil & Co. v. Stamford Gas & Electric Co. (Tex. Civ. App.) 242 S. W. 536; Norton v. Galveston, H. & S. A. Ry. Co. (Tex. Civ. App.) 108 S. W. 1044.

In the case last cited the court said: "He (plaintiff) chose to particularize the grounds of negligence, and could recover on no others. The character of an action is fixed by the allegations in the pleadings, and not by facts subsequently disclosed by the evidence. Mims v. Mitchell, 1 Tex. 443; Lemmon v. Hanley, 28 Tex. 219; Tinsley v. Penniman, 83 Tex. 54, 18 S. W. 718. If plaintiff desired to avail himself of the presumption of negligence arising from the derailment, no matter how caused, he should have pleaded negligence generally, as was done in the cases cited by him."

There is no evidence tending to show that the gate in question as installed was in the intended manner of its use dangerous, and all the evidence shows that if it became dangerous it was because its original and purposed construction was tampered with and changed by some one without the knowledge of any one in authority for the defendant.

I think the judgment of the trial court should be affirmed. for the following reasons:

First. There was no evidence that the manager of the store had any notice or knowledge that the gate in question was being used by any one as an exit.

Second. There was no evidence that any employee of defendant reversed the intended movement of the gate at the time of the accident so that it could be revolved by one using it as an exit. The testimony of the plaintiff, that just as he was about to enter the gate he saw a man whom he did not know and did not know whether or not he was a milkman or what he was, who had something which looked like a crate under his left arm, is clearly no evidence that such man was a milkman. Indeed, he does not testify that the man in fact had any kind of crate, and by no means did he testify that he had a milk crate, or that he had any bottles as he alleged. The testimony of Knighton, manager of the store, that milk purchased from a dairyman was brought into the store by some employee of the store, and if there was anybody handling any milk bottles around there, taking them out in crates, it was an employee of the defendant, contrary to the conclusions of the majority of this court is no evidence that the man whom plaintiff mentioned either had a crate or any bottles, or that the man mentioned was an employee, of defendant.

Third. The evidence showing that some employees of defendant at some time prior to the accident reversed the movement of the gate in making their exit, without the knowledge of defendant, which did not contribute to the accident, would furnish no cause for holding defendant liable for the accident.

Fourth. Because it was shown that the cause of injury alleged and shown was the reversal of the gate as plaintiff attempted to enter through it, and it was shown that the gate was revolved only by one moving it with his hand or body for the purpose of exit or entrance. Under such circumstances, defendant could not as a careful party have reasonably anticipated that the gate would or could have been thrown with such force as to have resulted in the injury alleged by plaintiff or any similar injury.

For the reasons above expressed, I respectfully enter my dissent to the act of the majority in reversing the judgment.